An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1007

Filed 1 July 2026

Union County, Nos. 19CR053623-890, 21CR000587-890

STATE OF NORTH CAROLINA

v.

MARK ANGELO SAFRIT, Defendant.

Appeal by Defendant from judgment entered 8 April 2024 by Judge Nathan H. Gwyn, III, in Union County Superior Court. Heard in the Court of Appeals 12 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Juliane L. Bradshaw, for the State.*

> *Michelle Abbott for Defendant.*

PER CURIAM.

Defendant Mark Angelo Safrit appeals from the trial court's judgment entered after a jury convicted him of assault inflicting serious bodily injury and his plea of guilty to attaining habitual felon status. Defendant contends the trial court erred (1) by failing to instruct the jury on the statutorily acceptable means of rebutting the reasonable fear presumption in our Castle Doctrine, and (2) failing to clarify that jury

instructions regarding excessive force within self-defense did not also apply to the Castle Doctrine. We hold the trial court committed plain error, vacate Defendant's conviction, and remand for a new trial.

## I.    Factual and Procedural History

This appeal arises from a conviction of assault inflicting serious bodily injury. At trial, the State introduced evidence that tended to show the following:

Brandon King and Defendant have known each other since they were children. As they aged, the two men drifted apart and rarely had contact prior to 2019. On or about 24 August 2019, King, accompanied by his roommate, Travis Pressley, and his girlfriend, Tiffany Roberts, drove to Defendant's home to pay Defendant for marijuana. King called Defendant while on the way to Defendant's home. Defendant had a long driveway, which begins as gravel and transitions to concrete. When they arrived at Defendant's home, King parked his van at the end of the gravel section and off the concrete. King told Roberts to stay in the van while he and Pressley walked up to Defendant's home. Upon arriving at the side door, King told Pressley to wait outside because Defendant was uncomfortable around strangers. King entered Defendant's home without knocking as he had done previously.

Upon entering Defendant's residence, King announced himself and Defendant spotted Pressley. Pressley then entered the home. Defendant told Pressley "to get the F out of the house." Pressley and King did not leave. Defendant then punched Pressley with a closed fist, causing Pressley to stumble and fall outside. When

Pressley attempted to stand, Defendant punched him two more times, breaking his jaw. King rushed to Pressley and brought him back to the work van. King took Pressley to the hospital and spoke to law enforcement. At the time of the assault, Pressley was about five feet seven inches tall and weighed approximately 135 pounds. Defendant was six feet three inches tall and weighed between 180 and 190 pounds.

On 27 September 2021, Defendant was indicted on one count of assault inflicting serious bodily injury and one count of status as a habitual felon. Defendant gave notice of his affirmative defense of self-defense on 23 February 2024. The matter came on for trial on 4 March 2024, and Defendant was found guilty on 7 March 2024. Defendant elected to testify and admitted his previous convictions. At the charge conference, the State specifically referenced North Carolina Pattern Instruction ("NCPI") 308.80 regarding the Castle Doctrine. Defendant did not object to the State's proposed jury instructions, and then requested the court also instruct the jury as to NCPI 120.12, defining serious injury, and NCPI 308.10, explaining the affirmative defense of self-defense.

After the charge conference, the trial court instructed the jury with NCPI 308.10's language regarding self-defense, reasonableness of force, and excessive force as written. The trial court immediately followed the self-defense instruction by reciting NCPI 308.80 verbatim, including the following description of the rebuttable presumption of reasonable force in our statutory Castle Doctrine:

> A lawful occupant in a home does not have a duty to retreat

from an intruder. . . . Furthermore, a person who unlawfully and by force enters or attempts to enter a person's home is presumed to being doing so with the intent to commit an unlawful act involving force or violence. In addition, *absent evidence to the contrary*, the lawful occupant of a home is presumed to have held a reasonable fear of imminent death or serious bodily injury to himself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply; the person against who the defensive force was used was in the process of unlawfully and forcefully entering or had unlawfully and forcibly entered a home or if that person had removed or was attempting to remove another against that person's will from their home and the person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or an unlawful and forcible act was occurring or had occurred. It is for you the jury to determine the reasonableness of the Defendant's belief from the circumstances as they appeared to the Defendant at that time.

If you find beyond a reasonable doubt that the Defendant assaulted the victim, you may return a verdict of guilty only if the State has satisfied you beyond a reasonable doubt that the Defendant did not act in lawful defense of the Defendant's home, that is that the Defendant did not use such force to prevent a forcible entry or terminate the intruder's unlawful entry into the Defendant's home, that the Defendant did not reasonably believe that the intruder would kill or inflict serious bodily harm to the Defendant or others in the home, that the Defendant did not reasonably believe that the degree of force the Defendant used was necessary to prevent a forcible entry or terminate the intruder's unlawful entry into the Defendant's home. If you do not so find or have a reasonable doubt that the State has proved any one or more of these things, then the Defendant would be justified in defending the home and it would be your duty to return a verdict of not guilty.

Defendant did not object to the jury instructions as they were given. The jury returned a guilty verdict after approximately five hours of deliberation. Defendant did not object to the jury's verdict at trial. After the verdict was entered, Defendant pled guilty to his status as a habitual felon. The trial court sentenced Defendant to between ninety-eight and 130 months in prison and ordered Defendant to pay court costs and attorney's fees in excess of $365.50. Defendant did not orally appeal.

On 18 March 2024, Defendant pro se filed a notice of appeal with the Union County Clerk of Superior Court. The notice of appeal did not designate which appellate court was desired but did specifically appeal the charges of assault and habitual felon from the 7 March 2024 trial. The trial court accepted Defendant's notice of appeal by court order on 26 March 2024. Defendant petitioned this Court for writ of certiorari on 18 November 2024.

## II. Analysis

Defendant argues the trial court erred by omitting the statutorily enumerated ways in which the State may rebut the reasonable fear presumption when charging the jury of the Castle Doctrine under NCPI 308.80. Alternatively, Defendant argues the trial court plainly erred by informing the jury that Defendant was prohibited from using excessive force in an "extraneous traditional self-defense instruction." Defendant also contends the trial court's errors, if not individually sufficient, caused jury confusion with a cumulative effect of depriving Defendant of a fair trial.

### A. Petition for Writ of Certiorari

We first determine whether Defendant's appeal is properly before this Court. Defendant petitions this Court for writ of certiorari after improperly noticing his appeal under section 15A-1444(a) of the North Carolina General Statutes. Defendant argues certiorari should be granted because the record demonstrates Defendant's intent and reasonable efforts to appeal. Defendant also argues the merits of this case invite this Court to grant certiorari.

In appropriate circumstances, this Court may permit review of judgments of lower tribunals when a party fails to properly perfect their appeal. N.C. R. App. P. 21(a)(1). Certiorari is appropriate if (1) the petitioner can show "merit or that error was probably committed" in the lower tribunal and (2) "extraordinary circumstances" exist justifying review. *Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023). This Court may also choose to grant certiorari in its sound discretion. *State v. Ricks*, 378 N.C. 737, 740, 862 S.E.2d 835, 838 (2021). This Court has exercised its sound discretion to grant certiorari when appellants *pro se* file notices which do not comport with the North Carolina Rules of Appellate Procedure. *See State v. Pierce*, 295 N.C. App. 556, 558, 906 S.E.2d 530, 532 (2024) ("A defective notice of appeal should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake." (internal quotations omitted)).

Here, Defendant *pro se* filed a notice of appeal with the Union County Clerk of Superior Court on 18 March 2024. This notice did not reference the desired appellate court but did reference the assault conviction and habitual felon status. Defendant also failed to serve his filed notice of appeal on the State. The notice of appeal does not comply with the requirements of the Rules of Appellate Procedure. *See* N.C. R. App. P. 4(b)–(c). However, in our discretion, we grant certiorari because Defendant's intent to appeal his specific judgment was apparent and the State was not misled by Defendant's notice. *See Pierce*, 295 N.C. App. at 558, 906 S.E.2d at 532. We now turn to the merits of Defendant's arguments.

## B. Claims for Plain Error

Defendant argues the trial court erred with respect to the jury instructions in his trial in two ways. First, the trial court omitted the statutorily proper methods of rebuttal of the presumption of reasonable fear when instructing the jury on the Castle Doctrine; and, second, the trial court instructed the jury that Defendant was prohibited from using excessive force in an "extraneous traditional self-defense instruction" without clarification that excessive force did not apply to the Castle Doctrine, as well. Defendant did not properly preserve either issue and requests this Court review each for plain error.

If a criminal defendant fails to object or preserve their issue at trial, he may appeal only if the judicial action questioned is alleged to specifically and distinctly amount to plain error. N.C. R. App. P. 10(a)(4). To determine whether a defective

jury instruction rises to plain error, this Court "must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378–79 (1983). Defective jury instructions arise to plain error when the error "was so fundamental 'that it tilted the scales' and caused the jury to reach its verdict." *State v. Bagley*, 321 N.C. 201, 211, 362 S.E.2d 244, 250 (1987) (citations omitted).

North Carolina's Castle Doctrine, codified at section 14-51.2 of our General Statutes, makes it lawful for a person to use force to defend his or her home from an unlawful intruder. Specifically, the statute reads:

> The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
>
> (1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
>
> (2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

N.C. Gen. Stat. § 14-51.2(b) (2025). The presumption of "reasonable fear" justifying the use of defensive force established in section 14-51.2(b) is a rebuttable presumption, but is only rebuttable through one of five statutorily enumerated

circumstances. *See* N.C. Gen. Stat. § 14-51.2(c); *State v. Phillips*, 386 N.C. 513, 524, 905 S.E.2d 23, 31 (2024) ("Practically, if the presumption [in section 14-51.2(b)] could be rebutted by other circumstances, such as the victim's relative size or strength, it would serve no purpose.").

Defendant's arguments in this case are almost identical to those made by the defendant in this Court's recent opinion in *State v. Thomas*, 300 N.C. App. 564, 565, 921 S.E.2d 847, 849 (2025). In *Thomas*, this Court held it was plain error for the trial court not to explicitly clarify that jury instructions on "excessive force" applicable to the defendant's requested instructions regarding traditional self-defense did not also apply to instructions regarding the defense of habitation, also known as the Castle Doctrine. *Id.* at 587, 921 S.E.2d at 862. The Court in *Thomas* based its holding in large part on our Supreme Court's analysis of error in *State v. Phillips*.

In *Phillips*, the trial court instructed the jury with pattern instructions regarding the Castle Doctrine, then immediately also instructed the jury that "[a] defendant does not have the right to use excessive force." *Phillips*, 386 N.C. at 515, 905 S.E.2d at 26. Our Supreme Court clarified the relationship between traditional self-defense that occurs in the home and the statutory Castle Doctrine as codified in N.C. Gen. Stat. § 14-51.2 (2023). *Id.* at 521–25, 905 S.E.2d at 29–32. The Court explained that, while reasonable or excessive force is a part of traditional self-defense, under the Castle Doctrine a defendant is presumed to fear for his life and is entitled, based on that presumption, to use any amount of force in his defense. *Id.* at 524, 905

S.E.2d at 31. Put simply, "the jury should not have considered the proportionality of [the] defendant's force unless the jury found that either (1) [the] defendant did not qualify to invoke the castle doctrine, or (2) [the] defendant qualified, but the State properly rebutted the presumption of reasonable fear." *Id.* at 527–28, 905 S.E.2d at 33. The Court ultimately held it was error for the trial court to improperly instruct the jury on acceptable force under the Castle Doctrine but remanded to this Court to analyze for the first time whether the error was prejudicial to the defendant's trial. *Id.* at 528, 905 S.E.2d at 34.

This Court in *Thomas* applied our Supreme Court's error analysis from *Phillips* where the trial court correctly instructed the jury on excessive force within its instruction on traditional self-defense and defense of a family member; "the instruction was given twice without clarifying that it would not apply in the context of the [Castle Doctrine] instruction." *Thomas*, 300 N.C. App. at 576, 921 S.E.2d at 856. The Court recognized the defendant requested the trial court instruct the jury on traditional self-defense, and, ordinarily, a "'defendant will not be heard to complain on appeal'" for invited error when he "requested the jury instructions and consented to the instructions as given." *Id.* at 571, 921 S.E.2d at 853. The Court nonetheless declined to hold the trial court's error to be such invited error under these circumstances "[b]ecause counsel and the trial court did not have the benefit of our Supreme Court's first detailed guidance on jury instructions on [the Castle Doctrine in *Phillips*] at the time of the trial." *Thomas*, 300 N.C. App at 572, 921 S.E.2d at 853.

The *Thomas* Court found the trial court erred "because excessive force was addressed within the trial court's instructions on self-defense and defense of a family member, not technically within the paragraph including the [Castle Doctrine] instruction, but that subtle difference would not be discernable to the members of the jury listening to the instructions." *Id.* at 582, 921 S.E.2d at 859. Further, "the trial court erred by failing to address the specific instances stated in Section 14-51.2(c) which may rebut the presumption created by Section 14-51.2(b) and by failing to clearly limit the application of the instruction on 'excessive force' solely to the defenses of common law self-defense and defense of family members, in accord with *Phillips*." *Id.* at 587, 921 S.E.2d at 862.

The Court then assessed whether the trial court's error was prejudicial enough to rise to the level of plain error. *Thomas*, 300 N.C. App at 582, 921 S.E.2d at 859. There, the evidence conflicted as to whether the victim forcibly entered onto the defendant's property. *Id.* at 585, 921 S.E.2d at 861. The verdict sheet did not ask the jurors to make specific findings of fact supporting their verdict, and the evidence did not support any of the statutorily enumerated ways to rebut the presumption of fear in the Castle Doctrine. *Id.* at 586, 921 S.E.2d at 862. The Court concluded, based on the facts of the case, "the error in the jury instructions did have a probable effect on the outcome of the trial and the error resulted in the denial of a fair trial." *Id.* at 585, 921 S.E.2d at 861 (citation modified).

Here, the trial court explained the prohibition against excessive force at least four times in its traditional self-defense instruction. Thereafter, the trial court did not clarify that the concept of excessive force applied only to self-defense.

The court's jury instructions on the Castle Doctrine stated section 14-51.2(b)'s presumption of reasonable fear applied "absent evidence to the contrary," but did not instruct the jury that only the types of evidence to the contrary statutorily enumerated in section 14-51.2(c) could be considered to rebut the presumption.

Defendant requested the trial court instruct the jury on self-defense, and now contends that instruction was "extraneous," but the instruction was nonetheless given to the jury. Like *Thomas*, we will not hold the trial court's conduct to be invited error because the parties and the trial court did not have the guidance of *Phillips*, nor *Thomas*, before them at the time. *Thomas*, 300 N.C. App. at 572, 921 S.E.2d at 853. Under *Phillips* and *Thomas*, the trial court in the case *sub judice* erred by failing to properly clarify the excessive force instructions and to limit the jury's considerations under section 14-51.2(c).

The trial court's failure to properly instruct the jury likely had a probable impact on the jury's ability to render a verdict in this case. The jury was presented with conflicting evidence whether the victims were permitted to be on Defendant's property, and then in his home. This case differs from *Thomas* in that the evidence also conflicted on whether a victim attempted to discontinue his efforts to enter and exited Defendant's home, evidence which could rebut the presumption of deadly fear

under section 14-51.2(c). *See* N.C. Gen. Stat. § 14-51.2(c)(5). The evidence did conclusively show the victims were at some point inside or entering Defendant's home when the altercation began, and the jury would need to have found the Castle Doctrine did not apply to convict Defendant. *See Thomas*, 300 N.C. App. at 587, 921 S.E.2d at 862. The defenses available to Defendant turned on the jury's resolution of the disputed facts, and its application of those facts to the jury instructions it received.

The trial court did not request the jury render a special verdict in this case including the findings of fact upon which its verdict relied. Absent proper and clear jury instructions, we cannot say whether the jury declined to find Defendant was justified under the Castle Doctrine based upon statutorily acceptable facts.

## III. Conclusion

The trial court committed plain error because Defendant was prejudicially denied clear and accurate jury instructions on his Castle Doctrine defense. We vacate Defendant's conviction and remand for a new trial with proper jury instructions.

NEW TRIAL.

Panel consisting of Judges GORE, GRIFFIN, and STADING.

Report per Rule 30(e).